J-A15042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LAUREN E. MISSAL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| YAZAN A. MAHMOUD | : | |
| | : | |
| Appellant | : | No. 1791 MDA 2025 |

Appeal from the Order Entered November 20, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s): 202511772

BEFORE:   KUNSELMAN, J., LANE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:            **FILED: AUGUST 12, 2026**

Yazan A. Mahmoud appeals from the order granting the Protection from Abuse Act[1] (PFA) petition filed by Lauren E. Missal as to herself and the parties' minor child, E.M. (born 6/2011).[2]  Mahmoud raises challenges to:  (1) the sufficiency of the evidence; (2) allegedly improper *ex parte* communications; and (3) the use of PFA proceedings to allegedly circumvent existing custody orders.  We affirm.

Missal initiated this case by filing a PFA petition on behalf of herself and E.M., against Mahmoud, on October 27, 2025.  Relevant to Mahmoud's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 23 Pa.C.S. § 6101 *et seq.*

[2] The parties have two additional minor children, who are not subjects of this appeal.

arguments, the parties were engaged in simultaneous custody litigation during the pendency of the litigation that is the subject of this appeal. On November 12, 2025, the court held a hearing on Missal's PFA petition and granted it on November 20, 2025. Mahmoud timely appealed but failed to designate this case as a "Children's Fast Track Appeal," Pa.R.A.P. 102, and failed to concomitantly file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).[3] On December 23, 2025, the trial court entered an order directing Mahmoud to file a concise statement, but the trial court's order did not strictly comply with the requirements of Rule 1925(b)(3)(i).[4] Mahmoud failed to file a concise statement within twenty-one days of the entry of the trial court's defective order.[5] On January 22, 2026,

---

[3] We decline to find waiver on the basis that Mahmoud failed to comply with Rule 1925(a)(2). **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (failure to file concise statement concomitantly with children's fast track appeal is considered defective notice of appeal, but appeal will not be dismissed since failure to file Rule 1925 statement is violation of procedural rule and not order of court).

[4] Specifically, the order directed Mahmoud to file his concise statement within twenty-one days of the date of the order, rather than specifying "the number of days after the date of **entry** of the judge's order within which the appellant must file and serve the Statement." Pa.R.A.P. 1925(b)(3)(i) (emphasis added).

[5] We decline to find waiver on the basis that Mahmoud did not file a Rule 1925 concise statement in response to the court's defective Rule 1925 order. **See Imbrenda v. Imbrenda**, 350 A.3d 1061, 1069-70 (Pa. Super. 2026) (declining to find waiver where trial court's Rule 1925 order did not strictly comply with requirements); **see also Rahn v. CONRAIL**, 254 A.3d 738, 747 (Pa. Super. 2021) (same).

J-A15042-26

this Court entered an order directing Mahmoud to file a concise statement no later than February 2, 2026, and Mahmoud complied. Thereafter, the trial court issued a Rule 1925(a) opinion.

On appeal, Mahmoud presents the following issues for our review:

1. Did the trial court commit an error of law and/or abuse its discretion in granting a final protection from abuse order where the record contains no evidence of conduct constituting "abuse" under 23 Pa.C.S. § 6102, including no evidence of physical harm, threats, or conduct placing [Missal] in reasonable fear of imminent serious bodily injury?

2. Did the trial court err as a matter of law in concluding that the [Mahmoud] engaged in a "course of conduct" sufficient to support a protection from abuse order under 23 Pa.C.S. § 6102(a)(5), where the alleged conduct consisted of isolated, non-threatening interactions that did not establish reasonable fear of bodily injury?

3. Did the trial court commit an error of law and/or abuse its discretion in granting a protection from abuse order on behalf of the minor child[, E.M.,] where the child's testimony established no abuse, no threats, and no reasonable fear of imminent bodily injury, but instead reflected a preference regarding custody?

4. Did the trial court violate [Mahmoud]'s due process rights and commit reversible error by engaging in undisclosed *ex parte* communications with the minor child and third parties concerning the subject matter of the proceedings, and then relying upon or being influenced by those communications in granting the protection from abuse order?

5. Did the trial court err in granting a protection from abuse order where the record demonstrates that the proceeding was used to circumvent existing custody orders, rather than to address conduct meeting the statutory definition of abuse under 23 Pa.C.S. § 6102?

Appellant's Brief at 7 (unnecessary capitalization and suggested answers omitted).

- 3 -

Mahmoud's first three issues on appeal relate to the sufficiency of the evidence to support the grant of Missal's PFA petition.

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citation and quotation marks omitted).

As to Mahmoud's challenges to the sufficiency of the evidence to support the PFA award, we have previously explained that the following standards apply to such claims:

> The [PFA] does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., enough to tip a scale slightly.
>
> > When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa. Super. 2020) (citations quotation marks, and brackets omitted).

Here, the court granted Missal's PFA petition pursuant to both Section 6102(a)(2) and Section 6102(a)(5). As we need only affirm under one subsection as to each of Missal and E.M., we affirm under Section 6102(a)(5) for Missal and 6102(a)(2) for E.M. ***See, e.g.***, ***Custer v. Cochran***, 933 A.2d

1050, 1059 (Pa. Super. 2007) (*en banc*) ("Because we find that the evidence was sufficient to support the PFA order under the first category, we need not address the second.").

In relevant part, Section 6102(a) states:

"Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

\* \* \*

(2) Placing another in reasonable fear of imminent serious bodily injury.

\* \* \*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S. § 6102(a)(2), (5). "Actual physical harm is not required before a PFA petition may be granted." *Bhatia v. Fernandez*, 319 A.3d 517, 521 (Pa. Super. 2024).

When reviewing whether the evidence is sufficient to establish abuse under Section 6102(a)(2) of the PFA, we have explained that "the victim's fear of serious bodily injury must simply be reasonable[, and t]his section does not call for actual physical violence[.]" *Fonner v. Fonner*, 731 A.2d 160, 163 (Pa. Super. 1999).

In determining whether the evidence is sufficient to establish abuse under Section 6102(a)(5) of the PFA, we consider the following precepts:

In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury. The intent of the alleged abuser is of no moment. Moreover, this Court has held that past acts are significant in determining the reasonableness of a PFA petitioner's fear. As the goal of the [PFA] is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur for the [PFA] to apply.

***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (citations and quotation marks omitted).

Instantly, the trial court determined that Mahmoud committed abuses against both Missal and E.M. under Section 6102(a)(5) as follows:

On the occasion of October 10, 2025, Missal testified, after she had her fiancé[, P.L.,] obtain a coat for [the parties' son], as she was sitting in a chair watching E.M.'s soccer game, her son's hoodie just hit her in the face.

The facts and circumstances testified to by [the parties] establish that it was [Massoud] who hit [Missal] in the face with the hoodie [after P.L. retrieved the hoodie and gave it to the child at Missal's direction].

Then again, on October 26, 2025, while Missal was at their son's soccer game, and sitting across the field from Mahmoud, she stated[,] "I was sitting in a chair and Mahmoud got so close to—he was like—his knees were almost touching my knees and he was just standing over me." As Mahmoud was told to step back by her fiancé, he did not step back and pushed her fiancé back. In describing the incident[,] Missal stated [that Mahmoud] was ["]just about touching me["] and "he was standing right over me[."] She further testified that Mahmoud has done things in the past to make her afraid or intimidate her.

At another soccer game[,] Mahmoud came up to Missal, stood in front of her, came close to her, about two inches from her, and when her fiancé said that was close enough, he said to her fiancé, "I'm going to knock your face off[."]

Missal testified that Mahmoud has invaded her space on multiple occasions.

During the PFA hearing held on November 12, 2025, E.M. testified that Mahmoud, while she was a passenger in his car[,] grabbed her by the neck, and used a gun gesture to her head while [Missal] was standing outside the car.

[Mahmoud] would not let go of [E.M.] until she said "Yes, [f]ather." [E.M.] specifically testified in response to a question by [Mahmoud]'s counsel whether [Mahmoud] was hugging her, [E.M.] said "he wasn't hugging me[,"] "[h]e wasn't hugging me. It was his left arm around my neck and then his right hand's making the gun gesture[.]"

When asked if she was afraid of [Mahmoud], E.M. responded "Well, yeah." E.M. further testified that [Mahmoud] says really odd things to her, such as "I have demons in me."

Trial Court Opinion, 2/19/26, at 14-16 (headings, citations, and brackets omitted). Similarly, the trial court found the evidence sufficient to support abuse under Section 6102(a)(2), as to each of Missal and E.M., as follows:

The conduct of grabbing E.M. by the neck and making a gesture with his hand as if he was placing a gun at her head certainly would place her in fear of imminent serious bodily injury. As to Missal, Mahmoud placed his face so close to her face, had restricted her movement, intimidated her, and engaged in a physical altercation with her fiancé, in her presence, would also place in in fear of imminent serious bodily injury.

*Id.* at 16.

After our review, we conclude that the evidence of record was sufficient to establish that Mahmoud knowingly engaged in a course of conduct or repeatedly committed acts toward Missal, without proper authority, under circumstances which placed Missal in reasonable fear of bodily injury. *See* 23 Pa.C.S. § 6102(a)(5); *E.K.*, 237 A.3d at 519. Specifically, the evidence established that Mahmoud hit Missal in the face with a hoodie and got very close to her **at multiple soccer games in an intimidating manner**, and

- 7 -

during one of those incidents, Mahmoud also threatened Missal's fiancé, and during two of those incidents physically pushed Missal's fiancé in Mahmoud's presence.[6]  **See** N.T. PFA Hearing, 11/12/25, at 8-9, 10, 11-12, 16, 19-20, 25.  Further, we conclude that the evidence of record was sufficient to establish that Mahmoud placed E.M. in reasonable fear of imminent serious bodily injury when he grabbed E.M. by the neck and made a gesture with his hand mimicking the act of placing a gun at her head, and Mahmoud would not release E.M. until E.M. uttered specific words at his direction.  **See** 23 Pa.C.S. § 6102(a)(2); **E.K.**, 237 A.3d at 519; N.T. *In Camera* PFA Hearing, 11/12/25, at 13, 17-18, 20-21.  Although violence is not necessary to establish abuse under Section 6102(a)(2), the combination of those acts sufficed to establish that E.M.'s fear of bodily injury is reasonable.  **See Fonner**, 731 A.2d at 163. Accordingly, we find the evidence sufficient to sustain the PFA orders as to Missal and E.M.  Therefore, Mahmoud is not entitled to relief on his first three issues on appeal.

In his fourth issue, Mahmoud claims that there were improper *ex parte* communications between E.M., her sibling, and the court during the

_____

[6] The record reflects that Missal testified regarding two separate pushing incidents.  **See** N.T. PFA Hearing, 11/12/25, at 10 (Missal stating "Then [Mahmoud] pushed my fiancé[, a]fter being asked to step away from me."); *id.* at 11-12 (Missal testifying "There was a time at [a soccer] game at the high school stadium that [Mahmoud] came up to me, stood in front of me, and he blocked my exit and he said that he wasn't [going to] give me [one of the parties' other children] back until we talked about something and then **again**, he pushed my fiancé after that[,] who was close to me [and] who could have [] tripped and fallen on me.") (emphasis added).

proceedings. Nevertheless, as none of Mahmoud's claims are that **Missal** participated in such communications, none of the alleged communications qualify as *ex parte*.[7] ***See Commonwealth v. Murray***, 83 A.3d 137, 155 (Pa. 2013) (noting "an *ex parte* communication, by definition, involves the **inclusion of one party** in a consultation with a judge over the exclusion of another") (emphasis added). We emphasize that although E.M. is a subject of the PFA order, she is not a party in this case, and Missal is the only other party here, aside from Mahmoud.[8] Accordingly, no relief is due on this claim.

_____

[7] Mahmoud provides no **evidence** to substantiate his claims that Missal was involved and only offers rank speculation that Missal engaged in, or benefitted from, the alleged *ex parte* communications.

[8] Section 6106(a) of the PFA permits parents, adult household members, guardians ad litem, or the emancipated minors for themselves, to petition the court to seek relief on behalf of minor children, but unemancipated minors are not among the class of permitted petitioners, and therefore, are not parties to such an action. ***See*** 23 Pa.C.S. § 6106(a); ***see also, e.g.***, ***Wash. Cnty. Child. v. Gallagher***, 332 A.3d 1281, 1284 (Pa. Super. 2025) (explaining classes of eligible PFA petitioners on behalf of minors); ***cf. Adams ex rel. T.E.A. v. Adams***, 326 A.3d 107, 112 (Pa. Super. 2024) (discussing whether parent petitioner is party to PFA proceeding, declining to adopt trial court analysis finding parent is not party and child is party, and finding, in any event that trial court had inherent powers over parent whether designated as party or not, and otherwise characterizing parent as party for purposes of consent agreement for at-issue PFA petition). After our review, we do not find ***Adams*** controlling on the issue of whether a child is a party to a PFA proceeding where ***Adams*** did not discuss Section 6106, we referred to the relevant parent as a party throughout our decision, and this Court's analysis only inquired into whether the trial court's inherent powers extended over a parent PFA petitioner under 23 Pa.C.S. § 6114.1(a), which, we concluded, they did. In any event, Mahmoud's brief fails to cite to any authority for finding that E.M., who is an unemancipated minor, is a party to this proceeding.

Mahmoud does not dedicate any separate portion of the argument section of his appellate brief to his fifth issue on appeal, and thus, we deem it abandoned and waived. ***See*** Pa.R.A.P. 2119 ("**The argument shall be divided into as many parts as there are questions to be argued**; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.") (emphasis added); ***see B.S.G. v. D.M.C.***, 255 A.3d 528, 535 (Pa. Super. 2021) (finding waiver pursuant to Rule 2119(a)); ***see also T.K. v. A.Z.***, 157 A.3d 974, 978 (Pa. Super. 2017) (declining to review undeveloped appellate claim). Accordingly, Mahmoud is not due relief on any issue in this appeal.

Order affirmed.

Judge Lane joins the Memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2026

- 10 -